#26729-a-SLZ

**2014 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STERN OIL COMPANY,            Plaintiff and Appellant,

    and

STATE OF SOUTH DAKOTA
ex rel. STERN OIL COMPANY,         Plaintiff,

    v.

BORDER STATES PAVING, INC.
and LIBERTY MUTUAL INSURANCE
COMPANY, AS ITS SURETY,           Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON S. FLEMMER
Judge

* * * *

DANIEL K. BRENDTRO of
Zimmer, Duncan & Cole, LLP
Sioux Falls, South Dakota          Attorneys for plaintiff
                                             and appellant.

THOMAS R. OLSON of
Olson Construction Law, PC
West Saint Paul, Minnesota          Attorneys for defendants
                                             and appellees.

* * * *

ARGUED ON MARCH 26, 2014

OPINION FILED **05/14/14**

#26729

[¶1.] Border States Paving Company, Inc. (Border States) was the prime contractor on a road construction project. Stern Oil Company (Stern Oil) sued Border States and its surety, Liberty Mutual Insurance Company (Liberty Mutual), for fuel and petroleum products Stern Oil sold to a Border States subcontractor, Weatherton Contracting Company, Inc. (Weatherton). Stern Oil asserted three causes of action: one on Liberty Mutual's bond, one against Border States for breach of an asserted third-party contract to pay the bill, and one against Border States for unjust enrichment. The circuit court granted summary judgment against Stern Oil on all claims. We affirm.

*Background*

[¶2.] Border States was the prime contractor on a South Dakota Department of Transportation (DOT) construction project involving U.S. Highway 281. As required by SDCL 31-23-1, Border States acquired a performance bond from Liberty Mutual for the project.

[¶3.] Weatherton entered into a subcontract with Border States to supply crushed aggregate that would be incorporated into the highway. In 2008, Stern Oil sold Weatherton the fuel and petroleum products it needed to perform its subcontract. However, Weatherton failed to pay Stern Oil. In June 2009, Stern Oil obtained a judgment against Weatherton for the unpaid bills.

[¶4.] During the same year that Weatherton was supplying crushed aggregate on the Highway 281 project, Weatherton was also supplying material to Upper Plains Contracting, Inc. (Upper Plains), a contractor on an Aberdeen airport project. Mistakenly believing that its fuel had been used on the Aberdeen airport

-1-

project, Stern Oil initiated a bond claim in November 2010 against Upper Plains and its bond company. On April 5, 2011, Carl Weatherton, owner of Weatherton, was deposed in the Upper Plains litigation. During his deposition, he testified that Stern Oil's fuel had been used on the Highway 281 project rather than the Aberdeen airport project.

[¶5.] Additional discovery in the Upper Plains litigation revealed that Weatherton and Border States had communicated about Stern Oil's unpaid bills. In November 2008 correspondence, Weatherton sent Border States a ledger of Weatherton's unpaid suppliers. In that ledger, Weatherton stated that there were "checks to be issued" to Stern Oil totaling $111,012.37. Border States did not issue checks to Stern Oil for that amount. And, at the time of his deposition, Carl Weatherton believed that "Stern Oil should have been paid all they were owed or Border States is still holding the money there, one or the other."

[¶6.] Stern Oil did not bring this suit against Border States and Liberty Mutual until June 2011. At that time, the statute of limitations had run on Stern Oil's claim on Liberty Mutual's performance bond. *See* SDCL 31-23-4.[1] However, Stern Oil contended that the statute of limitations should be equitably tolled. Stern Oil also pleaded timely, direct causes of action against Border States for unjust enrichment and breach of an alleged third-party beneficiary payment agreement

---

1. The DOT made final settlement on the project in January 2010. SDCL 31-23-4 provides that a supplier's bond claim cannot be "commenced after the expiration of one year after the date of final settlement of such contract." Stern Oil's claim against Border States and Liberty Mutual was commenced a year and a half after final settlement.

between Weatherton and Border States under which Border States was to pay Weatherton's obligation to Stern Oil.

[¶7.] Border States moved for summary judgment. On the bond claim, Border States and Liberty Mutual relied, among other things, on Stern Oil's failure to timely file suit within the one-year statute of limitations. On the direct claims, Border States relied on the terms of its subcontract with Weatherton and the payments Border States made to Weatherton under the subcontract. Border States argued that it was not unjustly enriched because it paid more for the materials Weatherton was to provide than Weatherton was entitled to receive under the subcontract.[2] On the third-party beneficiary breach of contract claim, Border States presented an affidavit of Carl Weatherton, dated October 24, 2012, refuting that there was a third-party beneficiary contract to pay Stern Oil. He stated, "I requested that Border States pay several of Weatherton's suppliers for the Project, by way of joint check or direct check. Although I requested payment to Stern Oil, Border States did not agree to pay Stern Oil. Border States refused on the basis that it paid more than the final amount due under the Subcontract."

[¶8.] In opposing summary judgment, Stern Oil relied on Border States' payments to various Weatherton suppliers; the November 2008 ledger Weatherton provided Border States, stating that there were "checks to be issued" to Stern Oil; and Carl Weatherton's deposition testimony that "Stern Oil should have been paid

---

2. Weatherton was entitled to receive $908,191.03 under the subcontract. Border States made payments totaling $1,000,634.58. Border States paid Weatherton in three ways: (1) by issuing joint checks to Weatherton and its suppliers, (2) by issuing checks to Weatherton's suppliers, and (3) by issuing checks to Weatherton.

all they were owed or Border States is still holding the money there, one or the other." With respect to its bond claim, Stern Oil argued the November 2008 ledger provided sufficient notice. With respect to the direct claims, Stern Oil argued that the ledger and the parties' course of conduct created a third-party contract that required Border States to pay Stern Oil. With respect to unjust enrichment, Stern Oil argued that Border States was unjustly enriched because it retained a benefit (the value of the fuel and petroleum products) that Weatherton did not pay for.

[¶9.]     In July 2012, the circuit court granted Border States and Liberty Mutual summary judgment on the bond claim. The circuit court denied summary judgment on the unjust enrichment and third-party beneficiary breach of contract claims. In April 2013, the circuit court granted Border States summary judgment on the two remaining claims.

[¶10.]    Stern Oil now appeals to this Court raising three issues[3]:

1.      Whether the circuit court erred in granting summary judgment to Border States on Stern Oil's third-party beneficiary breach of contract claim.

---

3.     We review these issues under well-settled rules:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*De Smet Farm Mut. Ins. Co. of S.D. v. Busskohl*, 2013 S.D. 52, ¶ 11, 834 N.W.2d 826, 831 (citation omitted).

2. Whether the circuit court erred in granting summary judgment to Border States on Stern Oil's unjust enrichment claim.

3. Whether the circuit court erred in granting summary judgment to Border States and Liberty Mutual on Stern Oil's bond claim.

*Decision*

*Third-Party Beneficiary Breach of Contract Claim*

[¶11.] "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." SDCL 53-2-6. In order for a third party to enforce a contract, the contract itself must be enforceable. *Cf. Jennings v. Rapid City Reg'l Hosp., Inc.*, 2011 S.D. 50, ¶ 35, 802 N.W.2d 918, 929 (Konenkamp, J., dissenting) (citation omitted) (recognizing that a third-party beneficiary's rights are subject to any defenses and claims of the promisor against the promisee arising out of the contract). One essential element of an enforceable contract is that the parties must have consented to the agreement. SDCL 53-1-2(2); *see also Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 21, 736 N.W.2d 824, 832 (providing that mutual assent is required to form a contract).

[¶12.] The circuit court granted summary judgment, ruling that Stern Oil failed to rebut Border States' summary judgment showing that it had not consented to any agreement to pay Weatherton's suppliers. The court noted that the October 24, 2012 affidavit of Carl Weatherton "makes clear that there was not a contract or agreement between Border States and Weatherton as to who would be paid." *See supra* ¶ 7.

[¶13.] Stern Oil argues that the circuit court incorrectly relied on Carl Weatherton's 2012 affidavit because it was contradicted by his 2011 deposition testimony in the Upper Plains litigation in three respects. First, in his 2011 deposition, Carl Weatherton stated that he "directed" Border States to issue joint checks to Stern Oil, but in his affidavit he stated that he "requested" Border States to issue checks to several of Weatherton's suppliers. Stern Oil claims this difference is material because the term "directed" suggests that there was an agreement and that Carl Weatherton "believed Border States had no discretion" regarding the payment of Stern Oil's bills; but the term "requested" suggests discretion. Second, in his deposition Carl Weatherton testified that "Stern Oil should have been paid all they were owed or Border States is still holding the money there, one or the other"; but in his affidavit he stated: "Although I requested payment to Stern Oil, Border States did not agree to pay Stern Oil." Third, in his deposition Carl Weatherton testified that he had not talked to anyone at Border States about why the check to Stern Oil was not issued, but in his affidavit he stated: "Border States refused [to pay Stern Oil] on the basis that it paid more than the final amount due under the Subcontract."

[¶14.] Stern Oil contends that Carl Weatherton's affidavit should not have been considered in support of summary judgment because it contradicted his earlier deposition testimony. *See Guilford v. Nw. Pub. Serv.*, 1998 S.D. 71, ¶ 12, 581 N.W.2d 178, 181 (providing that a witness cannot claim a better version of facts in an affidavit prepared for summary judgment than the witness testified to in a prior deposition). However, a witness's contradictory affidavit is admissible if it clarifies

an ambiguity in the witness's earlier testimony. *DFA Dairy Fin. Servs., L.P. v. Lawson Special Trust*, 2010 S.D. 34, ¶¶ 21-23, 781 N.W.2d 664, 670-71.

[¶15.] In this case, Carl Weatherton's deposition testimony did not unequivocally assert that Border States consented to a contract to pay Stern Oil. Rather, the deposition only articulated Carl Weatherton's belief as to what Border States should have done upon receipt of the ledger. His affidavit clarified that although he believed that Border States should have paid the bill, it did not agree to do so because Weatherton had been fully paid on its subcontract. The circuit court's reliance on Carl Weatherton's clarifying affidavit was not improper.

[¶16.] Considering Carl Weatherton's affidavit, the circuit court did not err in ruling that there was no consent to form a contract to pay Stern Oil. In attempting to create a dispute of material fact about the matter, Stern Oil relied on testimony that Border States previously paid various Weatherton suppliers upon Weatherton's request and Carl Weatherton's belief that Border States would do so for Stern Oil. However, Carl Weatherton's belief about what Border States should have done did not create a genuine issue of material fact regarding Border States' actual consent to an agreement. Indeed, Stern Oil did not dispute Carl Weatherton's clarifying statement that: "Although I requested payment to Stern Oil, Border States did not agree to pay Stern Oil." Moreover, the written subcontract between Border States and Weatherton governed the payment of claims by suppliers against subcontractors. The contract indicated that Border States had no contractual obligation to pay Stern Oil. The contract provided that upon notice

to Border States of any claim by an unpaid third-party supplier, Border States

retained discretion whether to make a payment to that third-party supplier.[4]

[¶17.] We conclude that Stern Oil failed to identify an issue of fact suggesting

that Border States agreed to a third-party contract obligating it to pay Stern Oil for

Weatherton's bills. Because Border States had no contractual obligation to pay

suppliers like Stern Oil, summary judgment was properly granted on that claim.[5]

*Unjust Enrichment Claim*

[¶18.] To prevail on its unjust enrichment claim, Stern Oil "must [have]

show[n that]: (1) [Border States] received a benefit[,] (2) [Border States] was aware

[it] was receiving a benefit, and (3) that it is inequitable to allow [Border States] to

retain this benefit without paying for it." *See Hofeldt v. Mehling*, 2003 S.D. 25, ¶

16, 658 N.W.2d 783, 788 (citation omitted). The circuit court granted summary

judgment because Stern Oil failed to identify facts suggesting that it was

---

4. The Subcontract provided:

> That if notification of any claims have been made against the
> Sub-Contractor . . . arising out of labor or materials furnished
> the Project or otherwise on account of any actions or failures to
> act by the Sub-Contractor in the performance of the Sub-
> Contract, the Contractor may, at his discretion, withhold such
> amounts otherwise due or to become due hereunder to cover said
> claims and any cost or expense arising or to arise in connection
> therewith pending settlement thereof. The exercise of this right
> by the Contractor shall not bar the exercise of any other rights
> of the Contractor herein or by law provided.

5. Having concluded no contract was formed for lack of consent, we need not
address the other issues whether adequate consideration was exchanged to
form the alleged third-party payment agreement and whether such an
agreement needed to be in writing. *See Busskohl*, 2013 S.D. 52, ¶ 11, 834
N.W.2d at 831 (citation omitted) ("If there exists any basis which supports
the ruling of the trial court, affirmance of summary judgment is proper.").

inequitable for Border States to retain the benefits it received under its subcontract with Weatherton.  Stern Oil acknowledges that Border States paid more than was due Weatherton under the subcontract.  But Stern Oil contends that Border States received an extra benefit because it lost less money on the project than it would have if it had paid Stern Oil's bill.

[¶19.]        Stern Oil's arguments are premised on the assumption that Border States had some obligation to pay bills that Weatherton owed its suppliers.  But we have already concluded that there was no contract between Weatherton and Border States to pay Weatherton's suppliers.  Further, Weatherton was obligated under its subcontract to provide all the labor and material required for a fixed price of $908,191.03.  Because Border States paid more than that amount in order to receive the benefits it was due under its subcontract with Weatherton, Border States got less than the benefit of its bargain—it certainly did not receive more.  The circuit court correctly granted summary judgment to Border States on Stern Oil's unjust enrichment claim.

*Stern Oil's Bond Claim*

[¶20.]        Before any contract is entered into between a prime contractor and the State of South Dakota "for the construction, repair, or improvement of any public highway[,]" the prime contractor must obtain a performance bond.  SDCL 31-23-1.  Unpaid labor and material suppliers are permitted to bring suit against the bond for their claims.  SDCL 31-23-2.  A suit against the bond must be made within one year from the date of the final settlement of the contract between the prime contractor and the State.  SDCL 31-23-4.  In granting summary judgment to Border

States and Liberty Mutual on the bond claim, the circuit court relied on Stern Oil's failure to comply with the one-year statute of limitations. Stern Oil concedes it did not timely file its suit, but argues that the statute of limitations should be equitably tolled to allow its bond claim.

[¶21.] If legally recognized in this jurisdiction,[6] the doctrine of "[e]quitable tolling permits a plaintiff to bring suit after the expiration of the statute of limitations when inequitable circumstances have prevented the plaintiff from timely initiating suit." *Anson v. Star Brite Inn Motel*, 2010 S.D. 73, ¶ 15, 788 N.W.2d 822, 826 (citation omitted). However, the doctrine is limited to situations where extraordinary circumstances, truly beyond the plaintiff's control, exist to prevent timely filing. *Id.* ¶¶ 15-16, 788 N.W.2d at 826. Thus, the doctrine has been "applied where a party acts diligently, 'only to find himself caught up in an arcane procedural snare.'" *Dakota Truck Underwriters v. S.D. Subsequent Injury Fund*, 2004 S.D. 120, ¶ 20, 689 N.W.2d 196, 202 (quoting *Warren v. Dep't of the Army*, 867 F.2d 1156, 1160 (8th Cir. 1989)).

[¶22.] Here, Stern Oil's failure to timely file a bond claim was not caused by an arcane procedural snare or extraordinary circumstances beyond its control. On

---

6. There is some inconsistency in our case law whether equitable tolling is recognized in South Dakota. *Compare Anson v. Star Brite Inn Motel*, 2010 S.D. 73, ¶¶ 36-40, 788 N.W.2d 822, 831-32 (Konenkamp, J., concurring) (arguing equitable tolling as a legal doctrine does not apply in cases where the Legislature precludes the doctrine), *with Dakota Truck Underwriters v. S.D. Subsequent Injury Fund*, 2004 S.D. 120, ¶ 31, 689 N.W.2d 196, 204 (determining that equitable tolling applied to untimely Subsequent Injury Fund claims filed by workers' compensation insurers). This underlying issue was not raised as part of this appeal. We decline to review the issue until we have the benefit of briefing and argument. *See Star Brite*, 2010 S.D. 73, ¶ 15 n.2, 788 N.W.2d at 825 n.2.

the contrary, Stern Oil delivered fuel in the summer of 2008. Its bill went unpaid, and in June 2009, it obtained a judgment against Weatherton. The statute of limitations to file against Border States' and Liberty Mutual's bond did not begin to run until January 2010, and the statutory period did not lapse until January 2011. Therefore, Stern Oil had substantial time—even after it obtained a judgment against Weatherton—to file its bond claim. Indeed, prior to the expiration of the statute of limitations on claims against Border States' and Liberty Mutual's bond, Stern Oil filed a timely bond claim against Upper Plains' bond. Although the statutory bond claim requirements were different in the Upper Plains litigation,[7] that difference did not change the fact that Stern Oil was in complete control of its claim and was aware of the bond claim remedy. This demonstrates that Stern Oil's failure to timely file against Border States and Liberty Mutual was not "truly beyond [its] control." *See id.* The failure was caused by Stern Oil's conceded mistake. Further, the statutory requirements for filing against a bond claim are clear and unambiguous, and there was adequate time to file a timely claim. Therefore, the bond statutes do not present an "arcane procedural snare." *See id.*

[¶23.] Equitable tolling is not recognized for this type of mistake and lack of diligence. This case is analogous to *AEG Processing Center No. 58, Inc. v. South Dakota Department of Revenue and Regulation*, 2013 S.D. 75, 838 N.W.2d 843, where a party failed to file a bond that was a prerequisite for a timely appeal. In *AEG*, we stated:

---

7. *Compare* SDCL chapter 5-21, Performance Bonds for Public Improvement Projects, *with* SDCL chapter 31-23, Performance Bonds on Highway Contracts.

> While waiting for the Department's reply in regard to the stipulation to remand, AEG filed its appeal but failed to post a bond or pay the tax assessment. The fact that AEG filed its notice of appeal makes clear that AEG knew it had jurisdictional requirements to meet. Further, AEG had exclusive control over filing the bond and its failure to do so until after the expiration of the time for appeal was not "truly beyond [its] control." *Dakota Truck*, 2004 S.D. 120, ¶ 20, 689 N.W.2d at 202. In addition, nothing in the records suggests that the Department misled AEG or otherwise fostered the mistake. Therefore, the time for AEG to post its bond cannot be equitably tolled.

*AEG*, 2013 S.D. 75, ¶ 26, 838 N.W.2d at 851. Here, Stern Oil filed a timely bond claim against Upper Plains. This made clear that Stern Oil knew of the bond claim requirements for unpaid third-party suppliers involved in state construction projects. Yet, much like *AEG*, Stern Oil failed to timely file within the statute of limitations even though it had exclusive control over when to file suit. Although there is no dispute that Stern Oil's failure was due to mistake, nothing in the record suggests Border States misled or otherwise fostered Stern Oil's mistake. Therefore, even if recognized, equitable tolling is not available in this case.[8]

[¶24.] Stern Oil, however, also argues that the circuit court erred in failing to rule on its request for further discovery before considering the motion for summary judgment on the bond claim. On appeal, Stern Oil requests a remand for "further discovery and proceedings" in light of the court's failure to rule on its request. A circuit court's refusal to grant additional discovery prior to awarding summary judgment is reviewed for abuse of discretion. *Anderson v. Keller*, 2007 S.D. 89, ¶ 5,

---

8. Because of our ruling on the statute of limitations, we need not consider whether Stern Oil substantially complied with the notice requirement of SDCL 31-23-3. "If there exists any basis which supports the ruling of the trial court, affirmance of summary judgment is proper." *See Busskohl*, 2013 S.D. 52, ¶ 11, 834 N.W.2d at 831 (citation omitted).

739 N.W.2d 35, 37; *Williams Ins. of Pierre v. Bear Butte Farms P'ship*, 392 N.W.2d 831, 833 (S.D. 1986).

[¶25.]    The record reflects that on July 17, 2012, the day of the first summary judgment hearing, Stern Oil filed an affidavit requesting more time for additional discovery in order to investigate the knowledge of Border States, Weatherton, and Stern Oil.  Stern Oil stated that its attorney had "sent 28 discovery requests to [Border States] on June 8, 2012[,]" and "[Border States] responded last week by serving responses via email on Tuesday, July 10, 2012."  Because of the short time frame and amount of information to review, Stern Oil asked for more time to conduct discovery.  It indicated that additional discovery would "shed further light on Stern Oil's claim for equitable tolling of the statute of limitations[.]"[9]

[¶26.]    SDCL 15-6-56(f) "provides that a party opposing a motion for summary judgment is entitled to conduct discovery when necessary to oppose the motion." *Dakota Indus., Inc. v. Cabela's.com, Inc.*, 2009 S.D. 39, ¶ 6, 766 N.W.2d 510, 512. "Under [Rule 56(f)], the facts sought through discovery must be 'essential' to opposing the summary judgment[.]"  *Id.*  "This requires a showing how further discovery will defeat the motion for summary judgment."  *Id.* (quoting *Keller*, 2007 S.D. 89, ¶ 31, 739 N.W.2d at 43 (Zinter, J., concurring)).  To make this showing, the

---

9.    Stern Oil also requested additional time for discovery on the unjust enrichment and third-party beneficiary breach of contract claims.  Because the circuit court declined to grant summary judgment on those claims at that time, Stern Oil was effectively granted over nine additional months to conduct additional discovery on those matters.  Stern Oil did not file another Rule 56(f) affidavit prior to the second summary judgment hearing on those claims.  Therefore, we only address the circuit court's failure to grant additional time for discovery regarding the bond claim.

Rule 56(f) affidavit must include identification of "the probable facts not available and what steps have been taken to obtain" those facts, "how additional time will enable [the nonmovant] to rebut the movant's allegations of no genuine issue of material fact[,]" and "why facts precluding summary judgment cannot be presented" at the time of the affidavit. *Keller*, 2007 S.D. 89, ¶ 32, 739 N.W.2d at 43 (Zinter, J., concurring) (quoting *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006)); *see also Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, LLP*, 687 F.3d 1045, 1050 (8th Cir. 2012) (citation omitted) (internal quotation marks omitted) (requiring that "a Rule 56(f) affidavit must set forth specific facts further discovery might uncover"); 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.102[2] (3d ed. 2013) (providing the affidavit must identify specific facts essential to opposing summary judgment).

[¶27.]    Although Stern Oil's Rule 56(f) affidavit explained what steps had been taken to obtain discovery and the short time to review that discovery, it did not include identification of any specific facts further discovery might uncover. It also failed to state with specificity how additional discovery would rebut summary judgment. Rather, it only made a non-particularized statement that additional discovery of Border States', Weatherton's, and Stern Oil's "knowledge" would "shed further light" on Stern Oil's claim for equitable tolling of the statute of limitations.

[¶28.]    This general statement seeking further discovery of each party's knowledge was insufficient to satisfy the showing necessary under SDCL 15-6-56(f). First, Stern Oil did not explain how further discovery of its own employees' knowledge was necessary after July 17, 2012, when it had been pursuing the claim

-14-

since 2009. Second, although Weatherton's bookkeepers' identity was not known to Stern Oil until a week before the summary judgment hearing, Stern Oil failed to articulate how Weatherton's bookkeepers' knowledge was relevant to the elements of tolling. Similarly, Stern Oil did not identify how further discovery of "the knowledge of Border States via its key employees" could relate to equitable tolling. Even if Border States knew Stern Oil was due $111,012.37 from Weatherton as a result of unpaid 2008 bills, Border States was under no obligation to report to Stern Oil when or how to pursue the bond claim. That responsibility was Stern Oil's alone. Finally, Stern Oil failed to identify any probable facts that Border States frustrated, or directed anyone to frustrate, Stern Oil's bond claim. We acknowledge Stern Oil's argument that it did not know what precise facts it would find until it conducted discovery. But even at oral argument Stern Oil did not articulate *probable* facts relevant to tolling that could have been developed with additional discovery. "Mere speculation that there is some relevant evidence not yet discovered will never suffice." Moore et al., *supra*, § 56.102[2] (citing numerous Federal Circuit Courts holding speculative evidence is insufficient to extend time for discovery); *see also Hamilton*, 687 F.3d at 1050. The circuit court did not abuse its discretion in failing to grant additional time for discovery.

[¶29.]     The circuit court's summary judgment is affirmed.

[¶30.]     GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.