#30761-a-SPM
**2025 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JESSICA PAULSEN,                                   Plaintiff and Appellant,

v.

AVERA MCKENNAN,
AMBER SALOUM, MD, and
DOES 1–30,                                         Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

MICHAEL D. SHARP
Emery, South Dakota                               Attorney for plaintiff and
                                                  appellant.


ROGER A. SUDBECK
MATTHEW D. MURPHY of
Boyce Law Firm
Sioux Falls, South Dakota                         Attorneys for defendants and
                                                  appellees.


\* \* \* \*


CONSIDERED ON BRIEFS
MARCH 24, 2025
OPINION FILED **07/16/25**

#30761

MYREN, Justice

[¶1.]       Jessica Paulsen had severe bleeding after giving birth.  On December 14, 2021, Dr. Amber Saloum and the staff at the Avera McKennan Hospital performed a hysterectomy and another surgery to stop Paulsen's bleeding.  On December 15, 2023, Paulsen commenced a lawsuit against Avera McKennan, Dr. Saloum, and several unnamed parties (the Defendants), alleging that she did not consent to a hysterectomy.  The Defendants filed a motion for summary judgment, claiming Paulsen's cause of action was barred by the two-year repose period prescribed by SDCL 15-2-14.1.  The circuit court granted the Defendants' motion and Paulsen appeals.  We affirm.

## Factual and Procedural Background

[¶2.]       Paulsen had severe bleeding after she gave birth on December 13, 2021, at the Avera McKennan Hospital in Sioux Falls.  In response, Dr. Saloum performed a bedside physical examination and ultrasound.  Dr. Saloum became concerned that Paulsen had a ruptured uterine artery or uterus.  A computed tomography (CT) scan revealed a "prominent hemorrhage," and the medical staff suspected that Paulsen had a uterine rupture.

[¶3.]       Dr. Saloum updated Paulsen regarding her condition late in the evening on December 13, 2021.  According to Dr. Saloum, she also discussed and obtained informed consent from Paulsen to perform an "exploratory laparotomy, repair of [Paulsen's] uterus, evacuation of hematoma, and possible hysterectomy." Paulsen insists that she did not consent to a possible hysterectomy.

-1-

[¶4.]    In the early morning hours of December 14, 2021, Dr. Saloum began an exploratory laparotomy and "quickly determined the uterus had ruptured and that uterine tears were present in two different locations" and that a "uterine repair was not feasible and [a] hysterectomy was completed."

[¶5.]    Paulsen continued to bleed after the hysterectomy was completed and underwent a second surgery in the early morning hours of December 14, 2021, "to explore a suspected intraabdominal hemorrhage." Following this second surgery, Paulsen's bleeding stopped.

[¶6.]    During Paulsen's first surgical procedure, an assisting physician placed "a surgical suction drain" known as a "JP drain." In an affidavit, Dr. Saloum explained that this drain "helps with recovery and avoiding infection" and that it would have been placed even if they had not performed a hysterectomy. The JP drain was removed prior to Paulsen's discharge from the hospital on December 18, 2021.

[¶7.]    Paulsen's complaint alleged seven causes of action against the Defendants, including negligence, medical malpractice, breach of fiduciary duty, medical battery, respondeat superior, negligent retention, and fraud. The factual thrust of the complaint is as follows:

> 14.    On or about December 13, 2021 Plaintiff, who was pregnant at the time, went to the business of the Defendant, Avera McKennan for the purpose of child delivery.
>
> 15.    Defendant Saloum desired to perform a hysterectomy.
>
> 16.    Plaintiff relayed to the employee of Avera McKennan that she had no desire to have a hysterectomy.

17.    Defendant Saloum later approached Plaintiff and asked if she wanted more children. Plaintiff responded that she did want to have more children and did not want to have a hysterectomy.

18.    Defendant Saloum walked away without response to Plaintiff's instruction.

19.    Defendant Saloum undertook the undesired hysterectomy, despite Plaintiff's instruction to the contrary.

20.    Postoperatively, Plaintiff suffered critical complications.

21.    Defendant Saloum requested a second surgeon to correct her errors.

22.    When the second surgeon proceeded to open the sutures previously done by Defendant Saloum, blood "poure[d] out" of the Plaintiff.

23.    Other personnel reported discussion of how many children Plaintiff already had at the operating table as to Defendant Saloum's decision to give Plaintiff the hysterectomy against Plaintiff's instruction.

[¶8.]    The Defendants answered and asserted that Paulsen's claims were barred by the statute of repose in SDCL 15-2-14.1. At a scheduling hearing, the Defendants announced their intention to move for summary judgment on their statute of repose affirmative defense. The circuit court set a hearing for the Defendants' anticipated summary judgment motion for June 11, 2024. As expressed at the scheduling hearing, the Defendants filed a motion for summary judgment on their statute of repose affirmative defense. Paulsen filed the necessary responses.

[¶9.]    According to the Defendants' counsel, following the scheduling hearing, Paulsen's counsel "served voluminous discovery requests upon Avera McKennan and Dr. Saloum." The Defendants argued that it made little sense to expend time and resources responding to the Plaintiff's discovery before the circuit court could

resolve their summary judgment motion. However, Paulsen viewed this discovery as essential to her ability to defend against the Defendants' motion. The Defendants filed a motion for a protective order requesting the circuit court to hold Paulsen's discovery requests "in abeyance" until it could rule on their summary judgment motion. The circuit court did not resolve the protective order motion before the summary judgment hearing, and the Defendants did not respond to Paulsen's discovery requests before the hearing. Paulsen did not file any motions to compel the discovery.

[¶10.] At the hearing on the Defendants' summary judgment motion, the parties disagreed about when the repose period began to run and when Paulsen commenced her lawsuit. The circuit court concluded the statute of repose barred Paulsen's suit. Paulsen appeals. For the purpose of their appellate argument, the Defendants accept Paulsen's position that the two-year repose period began to run on December 15, 2021, and that Paulsen commenced her lawsuit on December 15, 2023.

## Decision

***Whether the circuit court erred when it granted the Defendants' motion for summary judgment on their statute of repose affirmative defense.***

[¶11.] This Court reviews "a circuit court's entry of summary judgment under the de novo standard of review." *Ries v. JM Custom Homes, LLC*, 2022 S.D. 52, ¶ 14, 980 N.W.2d 217, 222 (citation omitted). Under the de novo standard of review, "no deference is given to the decision of the [circuit] court." *Estate of Zoss v. S.D. Dep't of Revenue*, 2001 S.D. 124, ¶ 6, 635 N.W.2d 553, 554 (citation omitted).

[¶12.] "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Karst v. Shur-Co.*, 2016 S.D. 35, ¶ 15, 878 N.W.2d 604, 612 (quoting SDCL 15-6-56(c)). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists." *Id.* (citation omitted). "A showing is not sufficient unless 'the party challenging summary judgment substantiate[s its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation, conjecture, or fantasy.'" *Id.* (alterations in original) (citation omitted). "[S]ummary judgment is appropriate to dispose of legal, not factual questions." *Hayes v. N. Hills Gen. Hosp.*, 1999 S.D. 28, ¶ 30 n.6, 590 N.W.2d 243, 250 n.6 (alteration in original) (citation omitted).

[¶13.] "An action against a physician, surgeon, . . . hospital, . . . or other practitioner of the healing arts for malpractice, error, mistake, or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice, error, mistake, or failure to cure shall have occurred[.]" SDCL 15-2-14.1. "SDCL 15-2-14.1 is a statute of repose and not a statute of limitation." *Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 17, 878 N.W.2d 406, 413. "[A] statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'" *Id.* ¶ 18 (alteration in original)

(quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014)). "A statute of repose, on the other hand, . . . is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *Id.* (citation omitted).

[¶14.]     "While . . . SDCL 15-2-14.1 is a statute of repose rather than a statute of limitation[, it] does not change the basic question of determining when the two-year period has expired in any given action[; however,] there are important differences in the subsequent analysis." *Id.* ¶ 20.  Namely, "that a repose period is fixed and its expiration will not be delayed by estoppel or tolling." *Id.* (emphasis omitted) (citation omitted).

[¶15.]     While estoppel and tolling may not delay the running of a repose period, the continuing-tort doctrine can operate to delay the commencement of the repose period. *Id.* ¶ 26, 878 N.W.2d at 415.  "In the context of medical malpractice, [the continuing-tort] doctrine applies when harm is the cumulative effect of several treatments rather than the result of a single act." *Id.* ¶ 25 (citation omitted).  In such cases, the repose period begins to run on "the date of the last culpable act or omission of the defendant." *Id.* ¶ 18, 878 N.W.2d at 413 (citation omitted).  "However, the doctrine does not apply when 'a patient is able to identify the specific negligent treatment that caused [his or her] injury[.]'" *Id.* ¶ 25, 878 N.W.2d at 415 (alterations in original) (citations omitted).

[¶16.]     For purposes of this appeal, the parties agree that the two-year repose period in SDCL 15-2-14.1 began to run on December 15, 2021—the day after the Defendants performed the alleged non-consensual hysterectomy.  Similarly, for

purposes of this appeal, the parties agreed that Paulsen commenced her lawsuit on December 15, 2023. Using these dates, Paulsen contends that her suit was commenced before the period of repose expired. Her second argument is that the circuit court abused its discretion when it granted summary judgment before she had received the Defendants' discovery responses. She contends those responses may have revealed additional facts that would allow her to establish a continuing tort. She asserts that "[a]t present, Plaintiff knows that Defendants left at least one medical device in Plaintiff for several days. Since she was precluded from obtaining discovery, Plaintiff does not know whether Defendants participated in any other treatments, injections, or placed any other devices in her without her consent." We address Paulsen's discovery-related argument first.

> a.    *Whether the circuit court abused its discretion when it refused to grant Paulsen additional discovery before awarding summary judgment.*

[¶17.]    Paulsen served the Defendants with discovery requests. The Defendants did not respond. Paulsen did not file a motion to compel their responses. Instead, at the summary judgment hearing, Paulsen requested the opportunity to complete discovery before the court ruled on the summary judgment motion. Although the circuit court did not explicitly rule on her request, it implicitly denied the request when it proceeded to consider and grant the summary judgment motion. "A circuit court's refusal to grant additional discovery prior to awarding summary judgment is reviewed for abuse of discretion." *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 10, 915 N.W.2d 697, 700 (citation omitted).

[¶18.]    Pursuant to SDCL 15-6-56(f), "[s]hould it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." "Under [Rule 56(f)], the facts sought through discovery must be 'essential' to opposing the summary judgment." *Stern Oil Co. v. Border States Paving, Inc.*, 2014 S.D. 28, ¶ 26, 848 N.W.2d 273, 281 (alteration in original) (citation omitted). "This requires a showing how further discovery will defeat the motion for summary judgment." *Id.* (citation omitted). "To make this showing, . . . [the non-movant] must include identification of 'the probable facts not available and what steps have been taken to obtain' those facts, [and] 'how additional time will enable [the non-movant] to rebut the movant's allegations of no genuine issue of material fact[.]'" *Id.* ¶ 26, 848 N.W.2d 281–82 (citation omitted).

[¶19.]    Paulsen's claims against the Defendants are entirely premised on her assertion that she did not consent to the hysterectomy performed on December 14, 2021. The Defendants' motion for summary judgment was based on the premise that the alleged tort was complete when that hysterectomy surgery was complete. Paulsen does not dispute that the allegedly non-consensual hysterectomy was completed on December 14, 2021. The only facts that could extend the operation of the repose period would be evidence of a continuing tort. "In the context of medical malpractice, this doctrine applies when harm is the cumulative effect of several treatments rather than the result of a single act." *Pitt-Hart*, 2016 S.D. 33, ¶ 25, 878

N.W.2d at 415 (citation omitted). The plaintiff must prove "(1) that there was a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one continuing wrong." *Id.* ¶ 26 (citation omitted). However, if the plaintiff "is able to identify the specific negligent treatment that caused [his or her] injury[,]" the doctrine does not apply. *Id.* ¶ 25 (alteration in original) (citations omitted).

[¶20.] Paulsen has not claimed that she did not consent to an exploratory surgery. Her claims are entirely premised on the fact that she did not consent to the removal of her uterus. Paulsen urges this Court to apply the continuing-tort doctrine to this case because "at least one medical device" was implanted "in [her] for several days" after the two surgeries occurred on December 14, 2021. However, her complaint does not allege any tortious conduct related to her surgery or post-surgical care except the non-consensual removal of her uterus. Without these types of allegations, the insertion and extraction of the medical device was not "so related [to the hysterectomy] as to constitute one continuing wrong." *Id.* ¶ 26 (citation omitted).

[¶21.] Paulsen claimed generally that discovery may reveal additional procedures that occurred after the surgery on December 14, 2021. However, Paulsen provided no information to raise that claim above mere speculation. Also, the record reveals that counsel for the Defendants provided Paulsen's counsel with Avera's medical records six weeks before the summary judgment hearing. A party claiming that further discovery is necessary to defeat summary judgment must corroborate their claim with "identification of 'the probable facts not available[.]'"

*Stern Oil Co.*, 2014 S.D. 28, ¶ 26, 848 N.W.2d at 282 (citation omitted). "Mere speculation that there is some relevant evidence not yet discovered will never suffice." *Id.* ¶ 28 (citation omitted). The circuit court did not abuse its discretion when it implicitly denied Paulsen's request to conduct additional discovery.

> b. *Whether the circuit court erred when it determined Paulsen's lawsuit was filed outside the two-year repose period provided for by SDCL 15-2-14.1.*

[¶22.] It is undisputed that Paulsen underwent two surgeries on December 14, 2021. For the purpose of their appellate arguments, the parties agree that the repose period began to run on December 15, 2021. The parties also agree that Paulsen's claims are subject to a two-year repose period set out in SDCL 15-2-14.1 and that Paulsen commenced her lawsuit on December 15, 2023. However, the parties disagree about how to calculate the two-year repose period. Paulsen suggests that a year is 365 days, and two years is 730 days. The Defendants contend that the term "year" is statutorily defined as a "calendar year," and a year ends at the exact moment the start date reoccurs on the calendar. The Defendants submit that "there are scenarios when [the 365-day counting method] would come up with a different date than the calendar counting method. This is [ ] due to Leap Years."

[¶23.] The Legislature has defined a "year" as "a calendar year." SDCL 2-14-2(36). "Whenever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs except where a contrary intention plainly appears." SDCL 2-14-4. The Legislature did not define the phrase "calendar year." This Court may use "dictionary definitions to determine

the plain and ordinary meaning of undefined words" and phrases. *Jackson v. Canyon Place Homeowner's Ass'n, Inc.*, 2007 S.D. 37, ¶ 11, 731 N.W.2d 210, 213 (citations omitted).

[¶24.] A "year" and "calendar year" are defined the same: "1. Twelve calendar months beginning January 1 and ending December 31. — Also termed *calendar year*. 2. A consecutive 365-day period beginning at any point; a span of twelve months." *Year*, Black's Law Dictionary (12th ed. 2024). Neither Black's Law Dictionary nor the Legislature has distinguished between leap years and regular years. However, Black's alternate definitions are both based on the premise that a year is a period of twelve months. The extra day in a leap year is accounted for in this framework. The twelve months that occur during a leap year include an additional day. Although leap year is a well-recognized event, the Legislature did not express any intention that its effect should alter the operation of SDCL 15-2-14.1. Accordingly, a year or calendar year is a period that lasts from one date until the moment that date reoccurs on the calendar, regardless of a leap year or other intervening adjustments. Similarly, two years is the period that lasts from one date up until the moment that date reoccurs on the calendar for the second time. This interpretation does not require any calculation and is consistent with this Court's analysis in *Toben v. Jeske*, 2006 S.D. 57, ¶ 8, 718 N.W.2d 32, 35 ("The three years began on July 3, 2001, and ended on July 2, 2004.").

[¶25.] The hysterectomy that forms the basis of Paulsen's complaint occurred on December 14, 2021. The parties agree that the two-year repose period began to run on December 15, 2021. The last date before that date reoccurred on the

calendar two times was December 14, 2023.  Consequently, the two-year period of repose expired on December 14, 2023, and that was the last day Paulsen could have brought her claims against the Defendants.  Because Paulsen commenced her lawsuit on December 15, 2023, one day too late, the statute of repose in SDCL 15-2-14.1 bars her claim.  We affirm.

[¶26.]      JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.