J. Dean TINAGLIA and Madonna L. Tinaglia, Plaintiffs and Appellants,

v.

Eugene ITTZES and Eva Ittzes, and Alvin A. Katt and Marion E. Katt, Defendants and Respondents.

No. 11766.

Supreme Court of South Dakota.

Sept. 26, 1977.

Roland E. Grosshans of Grosshans & Hauf, Hot Springs, for plaintiffs and appellants.

Curtis D. Ireland of Lynn, Jackson, Shultz, Ireland & Lebrun, P. C., Rapid City, for defendants and respondents.

WOLLMAN, Justice.

Plaintiffs seek a declaration that a road over defendants' property is a dedicated public road or, in the alternative, that there exists, appurtenant to plaintiffs' property, an easement of way for all purposes upon that road. Plaintiffs also pray for an injunction against defendants Ittzes and damages from all defendants. From a judgment dismissing plaintiffs' complaint on its merits, plaintiffs have appealed. We reverse.

In the spring of 1972, the plaintiffs, J. Dean and Madonna L. Tinaglia, acquired some three thousand acres of land from defendants Alvin and Marion Katt. All of that land lies a considerable distance south of the Fall River and Highway 18–385 in a

rugged area of Fall River County. The only access by land to the property is by means of a gravel road which runs north from plaintiffs' land through the SE¼NW¼ of Section 32, T.7 S., R.6 E., B.H.M., a parcel retained by the Katts and platted as the "Katt Tract." The road follows a publicly dedicated roadway known as the "Katt Tract Road" for a short distance, and then, after a ninety degree turn to the west and another to the north, it crosses a bridge over the Fall River. Just north of the river, while still in the SE¼NW¼ of Section 32, the road diverges into two forks which run the few hundred remaining feet to join Highway 18–385 at points approximately 400 feet apart. The west fork was referred to at trial as the "Hagen Route," the east fork as the "Mower/Ittzes Route." Plaintiffs claim a dedication of an easement over the Mower/Ittzes Route, which defendants Ittzes deny.

The easement in question was created by the filing of the plat of the Buena Vista Gardens Subdivision in 1954 by Verne and Eva Haley. The subdivision consists of all the land north of the SE¼NW¼ of Section 32 lying between the Fall River and what is now Highway 18–385. In the owner's certificate, the Haleys recited:

". . . We hereby dedicate to the public roads and streets of ingress and egress as here shown together with easement thru lots 15, 19 and 20, for ingress to lot 19 and to the SE¼ of the NW¼ of said Section 32. Said easement will be binding to all assigns and heirs."

The plat itself depicts the easement at issue by a dotted line and the words "easement for ingress" with an arrow pointing to the dotted line. The "roads and streets" referred to are depicted by solid lines and are marked as being twenty feet in width.

As shown by the Buena Vista Gardens plat, the easement originally ran close to and parallel to the Fall River and terminated at the southern boundary of the subdivision in Lot 15. The road, however, continued into the SE¼NW¼ of Section 32, which had been acquired by defendants Katt in 1953 from grantor other than the Haleys.

Mr. Haley testified that he used the original road to reach some corrals located in the SE¼NW¼ of Section 32. Subsequent to the platting, Highway 18–385 was constructed, for the right-of-way of which a strip of land along the northern perimeter of the subdivision was taken. During construction, the builders constructed a new road commencing some 150 feet west of the origin of the original easement. The new segment of road joined the existing road at a point near the southern boundary of the subdivision. Use of that portion of the old roadway isolated by the alteration was then discontinued.

The course of the Mower/Ittzes Route has not changed since the construction of the highway. It runs south from Highway 18–385 through Lot 20, owned by Arthur and Lucille Mower, and Lots 19 and 15, owned by the Ittzes, into the SE¼NW¼ of Section 32, owned by defendants Katt. Just inside the SE¼NW¼ of Section 32, it turns to the west and runs the few hundred feet to where it joins the Hagen Route.

Defendants Ittzes purchased Lot 19, a portion of Lot 15 and the south twenty feet of Lot 16 in 1963. All of the deeds in their chain of title identified the property by specific reference to "Buena Vista Gardens Subdivision as shown by the plat of said subdivision now on file . . .". At the time of the Ittzes' acquisition, the Mower/Ittzes Route as altered was in existence but was unimproved. After completing the construction of their home in 1968, defendants Ittzes at their own expense improved and paved that segment of the road from the highway to the southern boundary of their property. In 1972, shortly after plaintiffs acquired their property to the south, defendants Ittzes erected a gate across the road near their boundary with the SE¼NW¼ of Section 32 and posted two signs which warned "Private Property—No Thru Way" and "Dips—10 MPH." The gate is secured by a chain tied around a post, but it has never been locked. There was testimony to the effect that both plaintiffs and the Katts have been informed that they may use the road and that members of both families have, on occasion, actually used it.

Mr. Tinaglia testified that the first time he was shown the property that he ultimately purchased, Mr. Katt drove him there over the Mower/Ittzes Route. He stated that he was assured by Mr. Katt that it was the principal route to the property. He testified that he was given no reason to suspect that the Mower/Ittzes road was a private road. Mr. Mower also testified that it was never his understanding that the road was a private road.

Mr. Tinaglia testified that it was his intention to build a bridge over the Fall River to the east of the bridge presently used at a point due south of where the Mower/Ittzes Route leaves defendants Ittzes' property and enters the SE¼NW¼ of Section 32. The Katt Tract plat indicates that the Katt Tract Road, a public roadway dedicated by the Katts in 1962, runs from the Ittzes-Katt boundary at that point south across the river at the proposed bridge site and on south through the whole of the SE¼NW¼ of Section 32. The joining of this proposed road with the Mower/Ittzes Road would provide a virtually straight road from Highway 18–385 to the plaintiffs' land to the south.

For purposes of illustration, a reduced copy of defendant's exhibit "E" is reproduced below. Exhibit "E" is a transparent overlay prepared by a land surveyor from a study of the Buena Vista Gardens plat, the Katt Tract plat, a highway department plat of the area, and various deeds affecting the property shown. The shaded area at the top of the drawing represents the right-of-way for Highway 18–385. The area south of the highway marked into lots is Buena Vista Gardens. South of Buena Vista Gardens is the SE¼NW¼ of Section 32 or Katt Tract. Plaintiffs' property lies south of the area depicted in the drawing. The existing roads were not drawn on the overlay at the time it was received into evidence.[1] While testifying at trial the surveyor placed the overlay upon an aerial photograph of the same area and traced in the existing roads. He also traced over the dotted lines depicting the easement in question. He testified that there may have been a five per cent variation between the overlay and the photograph.

[See following illustrations]

We have also added the notation "Easement for ingress", which appeared on the original plat.

1. Because of the necessity to reduce the size of the exhibit, we found it necessary to change the location of some of the notations on the exhibit and to highlight some of the others.

The court found as facts the filing of the Buena Vista Gardens Subdivision plat and certification, the ownership of defendants Ittzes in Lot 19, and the ownership of defendants Katt in the SE¼NW¼ of Section 32. The court further found that plaintiffs had no ownership interest in either Lot 19 or the SE¼NW¼ of Section 32 and that the Katts' dedication to the public of the Katt "Tract Road" transferred no interest in the SE¼NW¼ of Section 32 to the plaintiffs. From these findings, the court concluded that the plat and certification did not create a public easement or right-of-way through Lots 15, 19, and 20 and that the easement was private and limited in purpose. The court then concluded that having no ownership interest in Lot 19 of Buena Vista Gardens or in the SE¼NW¼ of Section 32, plaintiffs had no right to the use of the easement appurtenant to those properties.

Dedication is generally defined as the devotion of property to a public use by an unequivocal act of the owner that manifests an intention that the property dedicated shall be accepted and used presently or in the future. The intention of the owner to dedicate and acceptance thereof by

the public are the essential elements of a complete dedication. *Larson v. Chicago, M. & St. P. Ry. Co.,* 19 S.D. 284, 103 N.W. 35; *Herrick v. Gregory,* 46 S.D. 89, 190 N.W. 881; 11 McQuillin, Municipal Corporations (3rd Rev.Ed.) § 33.02.

"Dedications are classified according to two methods. On the one hand as (a) express and (b) implied, on the other as (1) common-law and (2) statutory. A dedication is express when the intent is manifested by oral or written words, and is implied when the intent must be gathered from the acts of the dedicator. Otherwise stated, a dedication is express where the appropriation is formally declared, and is implied where it arises by operation of law from the owner's conduct and the facts and circumstances of the case." 11 McQuillin, supra, § 33.03, p. 631 (footnotes omitted).

*See Mason v. City of Sioux Falls,* 2 S.D. 640, 51 N.W. 770.

■ A statutory dedication is in the nature of a grant based on substantial compliance with the terms of the applicable statute, while a common-law dedication is generally held to rest upon the doctrine of estoppel in pais. *Larson v. Chicago, M. & St. P. Ry. Co.,* supra; *Cole v. Minnesota Loan & Trust Co.,* 17 N.D. 409, 117 N.W. 354.

SDCL 11–3–12 provides:

"When the plat or maps shall have been made out, certified, acknowledged, and recorded as provided in this chapter, every donation or grant to the public, or any individual, religious society, corporation, or body politic, marked or noted as such on such plat or map, shall be deemed a sufficient conveyance to vest the fee simple title of all such parcel or parcels of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against the donor, his heirs, and representatives, to the donee or grantee, his heirs or representatives, for the uses and purposes therein expressed and intended, and no other use and purpose whatever. The land intended to be used for the streets, alleys, ways, com-

mons, or other public uses shall be held in trust to and for the uses and purposes expressed or intended."

Under the provisions of a statute like SDCL 11–3–12, the filing and recording of a plat has been held to manifest an indisputable intention on the part of the owner to dedicate to public use that which is designated as public on the plat. *Ramstad v. Carr,* 31 N.D. 504, 154 N.W. 195. In *Atlas Lumber Co. v. Quirk,* 28 S.D. 643, 135 N.W. 172, this court held that an owner who filed a plat in accordance with the provisions of what is now SDCL 11–3–12 made a statutory dedication of the streets, avenues and alleys indicated on the plat. In *Grand Crossing Land and Improvement Co. v. City of Mobridge,* 39 S.D. 574, 165 N.W. 988, we recognized that under the provisions of what is now SDCL 11–3–12 a dedication attached to a plat constituted an unconditional dedication to the public of those streets, alleys, avenues, school grounds and parks expressly mentioned in the dedication and shown on the plat.

■ We conclude that under the principles set forth in *Atlas Lumber Co. v. Quirk* and *Grand Crossing Land Co. v. City of Mobridge,* supra, the easement in question was established through an express, statutory dedication by the Haleys and is thus different in nature from those easements and roads that depend for their legal existence upon a finding of implied dedication. See, e.g., *Mason v. City of Sioux Falls,* supra; *Larson v. Chicago, M. St. P. Ry. Co.,* supra; *Roche Realty & Investment Co. v. Highlands Co.,* 29 S.D. 169, 135 N.W. 684; *First Church of Christ, Scientist v. Revell,* 68 S.D. 377, 2 N.W.2d 674; *Lacey v. Judge,* 68 S.D. 394, 3 N.W.2d 115; *Stannus v. Heiserman,* 72 S.D. 567, 38 N.W.2d 130; *Brusseau v. McBride,* S.D., 245 N.W.2d 488.

■ There remains the question whether extrinsic evidence may be used to determine the meaning or extent of the dedication. Only when a plat is incomplete, ambiguous, or uncertain may surrounding circumstances and external evidence be considered for the purpose of determining the real intention of the platter. *Cf. Tsubota v.*

*Gunkel,* 58 Wash.2d 586, 364 P.2d 549 (1961); 11 McQuillin, supra, § 33.26. In applying a similar rule to the interpretation of a private easement created by grant, we held:

"We agree with both parties the easement of April 12, 1956 is clear, definite and unambiguous in all its terms and provisions, making it unnecessary to resort to extrinsic facts or circumstances to determine its meaning or extent. In construing a grant, conveyance, or other instrument creating an easement ' "the document itself, and that only, can, in the first instance, be looked at to discover the extent and nature of the agreement and the terms of the grant. If on the face of the document no doubt arises that the words are used in their primary sense, and if, read in that sense, they are plain and unambiguous, the matter is concluded". Gale on Easements, p. 80. Where the intention of the parties can be ascertained, nothing remains but to effectuate that intention. 2 Devlin on Real Estate, 835. The terms of the grant, as they can be learned either by words clearly expressed, or by just and sound construction, will regulate and measure the rights of the grantee.' " *Salmon v. Bradshaw,* 84 S.D. 500, 505, 173 N.W.2d 281, 284.

■ We conclude that no ambiguity exists in the dedication here involved. "Language is ambiguous when it is reasonably capable of being understood in more than one sense." *Newton v. Erickson,* 73 S.D. 228, 236, 41 N.W.2d 545, 549. When read in its entirety, as it must be, *Piechowski v. Case,* S.D., 255 N.W.2d 72, the owner's certificate expresses an intention to dedicate *to the public* roads and streets of ingress and egress and an easement through Lots 15, 19 and 20 for ingress to Lot 19 and to the SE¼NW¼ of Section 32. No doubt the Haleys could have limited the easement so that it would have run only to the benefit of the owners of Lot 19 and the SE¼NW¼ of Section 32. In fact, however, they neither did so nor, on the face of the certificate, did they attempt to do so, for the grant of such a limited easement is totally incompatible with the grant of an easement to the public. Only if the words "dedicate to the public" are read out of the owner's certificate is it possible to say that the dedicatory language is ambiguous. Such a reading is not reasonable unless one first introduces ambiguity by offering evidence that the language means something other than that meaning which a fair reading of the certificate itself conveys. Just as acts and conduct of an owner will prevail over the owner's subsequent testimony that he intended no dedication, *Larson v. Chicago, M. & St. P. Ry. Co.,* supra; *Evans v. City of Brookings,* 41 S.D. 225, 170 N.W. 133, so also will the unambiguous language of a dedication preclude the admission of parole evidence to explain the meaning of the plat. *Salmon v. Bradshaw,* supra; 11 McQuillin, supra, § 33.26.

■ We agree with plaintiffs that to construe the certificate as merely granting an easement appurtenant to Lots 19 and SE¼NW¼ of Section 32, one would have to rephrase the dedicatory language to read substantially as follows:

"We hereby dedicate to the public roads and streets of ingress and egress as here shown. We hereby grant to the owners of Lot 19 and the SE¼NW¼ of Section 32 an easement for ingress through lots 15, 19 and 20 to lot 19 and the SE¼NW¼ of Section 32."

Although such a reading is possible, it is not reasonable in the absence of any indication on the face of the plat to justify such an interpretation. The mere assertion that the language of an instrument is susceptible of more than one interpretation does not render it ambiguous. *Newton v. Erickson,* supra. We see no reason to engage in an exegesis of what on its face appears to be a reasonable, plausible grant to the public of the right of ingress to the areas in question, and we do not understand defendants to contend that with the right of ingress does not follow the concomitant right of egress.

■ Implicit in what we have said above is our conclusion that the public has accepted the dedication of the easement by use.

Cf. *Larson v. Chicago M. & St. P. Ry. Co.,* supra.[2]

The judgment dismissing plaintiffs' complaint is reversed and the case is remanded to the circuit court.

All the Justices concur.

2. We express no opinion concerning the exact location of the easement or who will be required to bear the cost of constructing and maintaining any roadway over the path of the easement as finally determined.