#30868-r-PJD
**2025 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JEREMY COYLE and
ABBEY COYLE,                                           Plaintiffs and Appellees,

v.

KENNETH MCFARLAND and
KELLI MCFARLAND,                                      Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHAEL W. DAY
Judge

* * * *

SARAH E. BARON HOUY
MATTHEW J. LUCKLUM of
Bangs, McCullen, Butler, Foye
   & Simmons, LLP
Rapid City, South Dakota                              Attorneys for defendants and
                                                     appellants.


ERIC JOHN NIES of
Nies Karras & Skjoldal, P.C.
Spearfish, South Dakota                               Attorneys for plaintiffs and
                                                     appellees.

* * * *

CONSIDERED ON BRIEFS
JUNE 2, 2025
OPINION FILED **11/12/25**

#30868

DEVANEY, Justice

[¶1.] Jeremy and Abbey Coyle commenced a trespass action against Kenneth and Kelli McFarland. Shortly after the McFarlands answered the Coyles' complaint, the Coyles filed a motion for partial summary judgment, to which the McFarlands failed to timely respond. The McFarlands moved for a continuance and submitted affidavits seeking additional time to conduct discovery pursuant to SDCL 15-6-56(f). The circuit court denied the McFarlands' motion and granted partial summary judgment to the Coyles. The McFarlands filed a motion for relief from the order pursuant to SDCL 15-6-60(b) and/or motion for reconsideration, which the circuit court also denied. The McFarlands appeal the circuit court's denial of their motion to continue, their motion for reconsideration, and the court's order granting partial summary judgment. We reverse and remand.

**Factual and Procedural Background**

[¶2.] The McFarlands purchased Lot 25A in the Willow Creek Estates Subdivision in Belle Fourche in 2015. Lot 25A is comprised of what was formerly Lot 25 of the Willow Creek Estates Subdivision and a portion of Lots P and Q of the Valley View Addition. As shown on the 2015 plat below, the southwest boundary of Lot 25A abuts Birnam Wood Lane and its southeast boundary abuts Walworth Street. The McFarlands also own Lot 24, which borders Lot 25A to the northwest.



[¶3.]    When the McFarlands bought Lot 25A in 2015, a house with an

attached garage and a driveway had already been constructed on the lot by the

prior owners, Todd and Julie Leach.[1]  As shown on the 2015 plat of Lot 25A and the

---

1.    The Leaches owned what was then identified as Lot 25.  The 2013 plat of Lot
      25 includes the original proposed Lot 25 identified in a 2002 preliminary plat
      of the Willow Creek Estates Subdivision, along with a portion of Lot Q of the
      Valley View Addition.  This plat shows the Walworth Street right-of-way
      ending at the northeast corner of the originally proposed Lot 25.  When Lot
      25A was platted in 2015 prior to the McFarlands' purchase of this lot, a
      larger portion of Lot Q was added, extending it further to the northeast.

aerial photo below,[2] the driveway extends from the home's attached garage to Walworth Street which appears to dead-end a short distance beyond the point where the driveway intersects with the street. From that point on, a dirt road continues along the remainder of Lot 25A and curves off to the northwest. The McFarlands park some of their vehicles in an area next to this dirt road which they believe is within the set-back of the unimproved Walworth Street right-of-way.



[¶4.]       In 2019, the Coyles purchased Lot Q1, which included a portion of what was Lot Q of the Valley View Addition and a portion of Block 1 of the Willow Creek Estates Subdivision. As shown in the 2019 plat below, Lot Q1 wraps around Lots 25A and 24 from the northeast to the northwest.

---

2.     This aerial photo was admitted as an exhibit in a protection order proceeding, file 09TPO23-37. At the request of the McFarlands, the circuit court took judicial notice of this protection order proceeding.



[¶5.] In 2023, the Coyles had Lot Q1 surveyed. The surveyor determined that approximately fifty square feet of the McFarlands' driveway was on Lot Q1 and drove a pin into the concrete driveway to mark the corner of the Coyles' lot. On May 2, 2023, Kelli McFarland filed a petition for a protection order against Abbey Coyle alleging "continual harassment over [a] property boundary dispute" that had been "ongoing [and] escalating since 2019." This petition was denied for failure to provide sufficient evidence of stalking.

[¶6.] Kelli filed another petition on June 5, 2023, alleging that Abbey had continued to harass her and cause property damage. In the petition, Kelli stated that Abbey and her son had entered the McFarlands' property, took pictures, and spray-painted lines on their concrete, garage apron, and across their yard. The circuit court granted an ex parte temporary protection order. The following week,

the Coyles commenced their civil trespass action against the McFarlands.
Meanwhile the circuit court held a hearing on the protection order petition on
August 4, 2023. At the hearing, Abbey's counsel asserted that a protection order
proceeding was not a proper venue to resolve a boundary dispute and noted that
Abbey's actions occurred on what she believed to be her property. In response,
Kelli's counsel explained that the subdivision plan recorded with the McFarlands'
deed shows the right-of-way extending "[t]he whole way out." He further explained
that the McFarlands and the property owners around them "had all agreed to build
their share of right-of-way" but the subdivision plan, that should have been
recorded against Lot Q1 at the time it was platted, was not recorded against Lot Q1
until May 2023, after this matter was brought to the attention of the Register of
Deeds. Kelli's counsel then acknowledged the parties' conflicting views about the
property boundary but maintained that Abbey's "invasive" conduct warranted a
protection order to "keep civility and peace."

[¶7.]       The circuit court acknowledged the pending boundary dispute but
found Abbey's actions were done willfully with an intent to harass. The court
entered an order for protection, effective for two years, but further noted that the
order "may expire upon the decision of the circuit court in the civil matter." The
order authorized Abbey ingress and egress on the public right-of-way to her
property but prohibited her from stopping or standing within fifty feet of Kelli's
home and from putting up cameras to monitor the home.

[¶8.]       In the Coyles' trespass action against the McFarlands, commenced on
June 7, 2023, they alleged that a portion of the driveway and vehicles the

McFarlands park on Lot Q1 constitute a civil trespass. They claimed the Walworth Street right-of-way does not extend along the entire southeastern boundary of Lot 25A. As a result of the alleged trespass, the Coyles asserted they incurred attorney fees and have been unable to use portions of Lot Q1, build a planned perimeter fence around the boundary of their property, or maximize the value of their lot.

[¶9.] The same counsel that represented the McFarlands in the protection order proceeding entered an appearance on behalf of the McFarlands in the trespass action on July 28, 2023. Counsel filed an answer on their behalf on August 9, 2023, denying several of the Coyles' allegations. Specifically, the McFarlands' answer asserted that pursuant to the Subdivision Improvements Agreement (SIA) executed by the property developer, the prior owners of the land, and the City of Belle Fourche (City), the right-of-way exists along the entirety of the southeastern boundary of Lot 25A. The McFarlands further asserted that the City, "after discovering that it had mistakenly failed to file the [SIA] against [Lot Q1] originally[,]" had subsequently recorded the SIA in May 2023 on Lot Q1. The McFarlands alleged that they purchased Lot 25A subject to "the duly recorded and executed [SIA] which requires the full buildout of right-of-way along the southeast boundary of Lots 24 and 25A."

[¶10.] The Coyles filed a motion for partial summary judgment on August 28, 2023, along with a statement of undisputed material facts; affidavits from the Coyles, the city attorney, and their surveyor; and a brief in support of their motion. They asserted that the following facts are undisputed. In 2002, Dacar, Inc., the property developer and owner of Lot P and Lot Q of Valley View Addition, intended

to develop this property into a subdivision called Willow Creek Estates No. 4, consisting of 166 platted lots. As shown in a preliminary plat of the subdivision, several of the lots in the northeast corner would be accessed via Walworth Street which would end in a cul-de-sac. In 2003, Dacar, Inc. recorded an SIA between Dacar, Inc. and the City which provided that Dacar, Inc. would install certain "Phase 1" improvements in accordance with the specifications associated with the 2002 preliminary plat.

[¶11.]     As later phases of the development progressed, a 2007 plat shows dedicated rights-of-way for several streets. Relevant here, the 2007 plat shows a dedicated Walworth Street right-of-way running along the entire eastern boundary of *proposed* Lot 25, ending at its northeast corner. However, when Lot 25 was platted in May 2013, it was larger than initially proposed and included additional land from Lot Q to the northeast. The 2013 plat shows the Walworth Street right-of-way ending at the corner of the originally proposed Lot 25. A new SIA was also recorded in May 2013, which obligated Dacar, Inc. to install certain improvements pursuant to the 2002 specifications "within the full length of the right-of-way adjacent to the southeast boundary of Lot 25 . . . prior to or as a condition of approval of any subdivision plat of Lot Q[.]"

[¶12.]     Lot 25 was then replatted in 2015 as Lot 25A, which included additional land from Lot Q to the northeast. The McFarlands purchased Lot 25A in 2015. The 2015 plat does not show any extension of Walworth Street beyond the corner of the originally proposed Lot 25. However, another SIA was recorded against Lot 25A in 2015, which obligated the subdividers, Dacar, Inc., and the

Leaches (the prior owners of Lot 25), and their successors and assigns, to complete the improvements detailed in the 2002 plans "*within the full length of the right-of-way adjacent to the southeast boundary of Lots 24 and 25A . . . prior to or as a condition of approval of any subdivision plat of Lot Q[.]*" (Emphasis added.) In 2019, what remained of Lot Q and a portion of Block 1 was platted as Lot Q1 and purchased by the Coyles. The 2015 SIA was not recorded against Lot Q1 at the time the Coyles purchased this lot.

[¶13.] In their brief in support of the motion for partial summary judgment, the Coyles argued that a right-of-way does not exist along the entire eastern boundary of Lot 25A. Rather, they contend it ends where proposed Lot 25 ended, halfway up the eastern boundary of Lot 25A. They note that the 2019 plat shows that the Walworth Street right-of-way does not extend along the entire boundary of Lot 25A, and Lot Q1 begins where the right-of-way ends, wrapping around Lot 25A's northeast corner.[3] Based on the 2019 plat, the Coyles argued that part of the McFarlands' driveway was trespassing on their land.

[¶14.] The Coyles also filed a notice of hearing on August 28, 2023, advising that a hearing would be held on their partial summary judgment motion on September 28, 2023. The McFarlands failed to respond to the Coyles' motion for partial summary judgment or statement of undisputed material facts within fourteen calendar days before the hearing, as required by SDCL 15-6-56(c). On

---

3. To support these arguments, the Coyles submitted affidavits from the City attorney and the surveyor of the property stating that, to their knowledge, the only dedicated and accepted public right-of-way for Walworth Street is that which is shown in the 2007 plat and which stops at the northeast corner of proposed Lot 25.

September 15, 2023, the Coyles then filed a "protective objection" to the submission of evidence by the McFarlands, objecting to any late submissions and asserting that all of the material facts contained in the Coyles' submissions should be deemed admitted by the McFarlands.

[¶15.] On September 18, 2023, ten days before the hearing, the McFarlands moved for a continuance. In the motion, their counsel stated: "[D]ue to personal reasons, [counsel] is unable to timely answer Plaintiffs['] pleadings adequately and has several prior obligations within said time period. This Motion is not made for the purposes of delay and made only to adequately represent Defendants in this matter." The Coyles filed an objection to the motion the same day, arguing that the McFarlands failed to show that good cause existed for a continuance and asserting that they would be prejudiced if the continuance was granted. They further claimed that granting a continuance "would render meaningless the statutory deadlines[.]"

[¶16.] The McFarlands' counsel submitted an affidavit in support of the motion for continuance on September 20, 2023, pursuant to SDCL 15-6-56(f) (Rule 56(f)). Counsel requested at least a 60-day continuance, explaining that there had not been "sufficient time to permit affidavits, obtain depositions and complete discovery" which would "establish that genuine issues of material fact exist" as to whether the boundaries depicted in the plat of Lot Q1 are defective. More specifically, counsel explained that depositions of "public officials and others associated with and/or familiar with the requirements of the plat application and recording process" would "demonstrate that said processes were not followed." Counsel further explained that discussions he and Kenneth had with a title

company and the Butte County Register of Deeds "confirm that the Subdivision Improvement Agreements should have been filed with the recording of the final plat of Lot Q1 and that said document was subsequently filed on or about May 23, 2023." Kenneth also submitted an affidavit providing similar information.

[¶17.]       The Coyles objected to the McFarlands' motion for continuance and their affidavits submitted in support thereof, again noting that the statutory deadline had passed and no good cause had been shown.  They also asserted their view that the recording of the SIA against Lot Q1 "would not have changed anything because it still did not dedicate any easement to the public."

[¶18.]       On September 21, 2023, the circuit court denied the McFarlands' motion for a continuance via email, stating: "I have reviewed the pleadings including Defendant's Affidavit and the two objections by the Plaintiffs.  For all the reasons set forth by Plaintiffs in their objections I am denying the Defendants' Motion to Continue."  The McFarlands' counsel then sent an email to the court on September 25, 2023, detailing counsel's reasons for missing deadlines related to the Coyles' motion for partial summary judgment.  Counsel explained that in June 2023, his wife of thirty years asked for a divorce.  The following month, he discovered that his wife was having an affair with a longtime family friend. Counsel related that these events turned his life upside-down, and that he had "unsuccessfully tried to maintain the pace of [his] law practice" and "unintentionally allowed these deadlines to pass."

[¶19.]       That same day, the McFarlands filed a response to the Coyles' motion for partial summary judgment which included a motion to reconsider their request

for a continuance. They also filed a response to the Coyles' statement of undisputed

material facts. In their brief, the McFarlands reiterated the need for additional

discovery and referenced the proceeding that had resulted in a protection order

against the Coyles, granted on August 4, 2023, wherein the circuit court found that

the boundary between the parties' property was in dispute. They also realleged

that the area in dispute is a dedicated right-of-way. In their response to the Coyles'

statement of undisputed material facts, the McFarlands disputed several facts

asserted by the Coyles. The McFarlands asserted that City Ordinance 16.16

requires the preliminary plat of the Willow Creek Estates subdivision plan "to be

filed with each lot as it is platted whereby making known to all parties where future

dedicated right-of-way will exist[.]" They alleged that the term "right-of-way" has

been historically used in the SIA to refer to the right-of-way illustrated and

described in the 2002 preliminary subdivision plat. They also claimed that the

approval of Lot 25A was subject to the SIA "being filed with the final plat" depicting

the future area of Walworth Street to be designated as a right-of-way, which had

sewer lines and other public utilities already installed.[4]

[¶20.] At the motion hearing, the circuit court again considered the

McFarlands' motion to continue but noted that it was not timely filed. The court

---

4.     Prior to the motion hearing, the McFarlands subpoenaed Travis Martin with
       Black Hills Title and James Dacar, owner of the development company and
       member of the development's building committee at the time the McFarlands'
       driveway was approved, to appear and testify at the summary judgment
       hearing. The covenants governing the Willow Creek Estates Subdivision
       provide that "[n]o driveway shall be constructed on any lot until its location
       has been approved by the Building Committee." The Coyles moved to quash
       the subpoenas and the circuit court granted their motion.

thus determined that, under SDCL 15-6-56(c)(3), the McFarlands had admitted to the facts set forth in the Coyles' statement of undisputed material facts by failing to timely serve an objection or opposing statement of material facts. The court then determined that, based on the McFarlands' admissions, the Coyles were entitled to partial summary judgment on their trespass claim as set forth in their complaint, leaving only the factual issue of damages to be decided later. The court entered a written order granting the Coyles' motion for partial summary judgment in its entirety, adjudging that the Walworth Street right-of-way ends at the corner of what was proposed Lot 25, the boundaries of Lot Q1 are as set forth on the 2019 plat, and any asset of the McFarlands located on Lot Q1 is trespassing on Lot Q1. The court ordered the McFarlands to "immediately remove from Lot Q1 any asset of [theirs] which is currently trespassing onto Lot Q1, including but not limited to any portion of the driveway which is located on Lot Q1, any vehicle, and any other personal property."

[¶21.]	The McFarlands thereafter obtained new counsel and on November 2, 2023, their counsel filed a motion for relief from the circuit court's order granting a partial summary judgment pursuant to SDCL 15-6-60(b) (Rule 60(b)) and/or a motion for reconsideration.[5] The circuit court held a hearing on December 11, 2023,

---

5.	The McFarlands' prior counsel submitted an additional affidavit in conjunction with this second motion for reconsideration. It provided more detail as to his personal circumstances at the time he failed to timely respond to the Coyles' partial summary judgment motion. Counsel explained that for a period of approximately four months, he "experienced significant, often debilitating stress" which included "grief, fear, worry, anxiety, and an inability to focus." Counsel also noted that in his 30+ years of practicing law, he had never missed a deadline.

and denied the McFarlands' motion. The court stated, "You know, to some extent, I agree with what the [McFarlands'] argument is. The law and the courts in South Dakota, they want finality . . . and . . . a merit-based decision[.]" The court continued,

> I understand that [the McFarlands' counsel] was going through some trauma, but rules are rules. And he could have moved to extend the deadlines. He didn't do it until after the fact. . . . So I've read everything. I considered this carefully the first time. I agree. I don't like to do things this way. But in this case, I agree with the Plaintiffs' argument and everything contained in the Plaintiffs' brief.

The court denied the McFarlands' motion.

[¶22.] The trial on damages commenced before the circuit court on September 3, 2024. However, at trial, the Coyles stated that after conducting discovery, they "concluded that damages truly are nominal and have concluded that it would be a waste of the Court and Counsel's time to go through and try to prove damages that are indeed nominal." The court then entered a final judgment and order incorporating its prior order for partial summary judgment.

[¶23.] The McFarlands appeal from the final judgment, raising the following restated issues:

1. Whether the circuit court abused its discretion in denying the McFarlands' motion for continuance.

2. Whether the circuit court abused its discretion in denying the McFarlands' motion for reconsideration.

3. Whether the circuit court erred in granting partial summary judgment.

## Standard of Review

[¶24.]      "A circuit court's decision to grant or deny a continuance under Rule 56(f) is reviewed for an abuse of discretion." *Davies v. GPHC, LLC*, 2022 S.D. 55, ¶ 51, 980 N.W.2d 251, 265 (citing *Stern Oil Co. v. Border States Paving, Inc.*, 2014 S.D. 28, ¶ 24, 848 N.W.2d 273, 281). Similarly, we review a grant or denial of enlargement of time to file a response to a summary judgment motion under the abuse of discretion standard. *See Colton Lumber Co. v. Siemonsma*, 2002 S.D. 116, ¶ 7, 651 N.W.2d 871, 873 (referring to a request to extend the time for filing an answer). An abuse of discretion is "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 57, 764 N.W.2d 474, 490 (quoting *Hogen v. Pifer*, 2008 S.D. 96, ¶ 9, 757 N.W.2d 160, 163).

## Analysis and Decision

### 1.      *Whether the circuit court abused its discretion in denying the McFarlands' motion for continuance.*

[¶25.]      The McFarlands advance two reasons why they contend the circuit court abused its discretion in denying their motion for additional time to respond to the Coyles' partial summary judgment motion. They contend the court failed to properly consider their request under Rule 56(f) for additional time to conduct discovery. They further contend that, in declining to consider their Rule 56(f) request in light of its untimeliness, the court failed to consider whether the circumstances presented constituted excusable neglect under SDCL 15-6-6(b). We address each issue in turn.

***Rule 56(f) request***

[¶26.]     The McFarlands assert the circuit court abused its discretion when denying their motion for a continuance by not conducting an analysis, under Rule 56(f), of whether additional time to conduct discovery was warranted.  At the outset, they contend there is no deadline for filing a Rule 56(f) affidavit.  While it is true that SDCL 15-6-56(f) does not refer to a deadline, SDCL 15-6-56(c) broadly states that "[u]nless different periods are fixed or permitted by order of the court," "*any* response or reply to [a motion for summary judgment and supporting documents] . . . shall be served not later than fourteen calendar days before the hearing[.]" (Emphasis added.)  A request for more time to conduct discovery or obtain affidavits and deposition testimony pursuant to Rule 56(f) falls into the category of a "response" to a summary judgment motion and is, therefore, subject to the timeframes in SDCL 15-6-56(c).  However, prior to addressing the court's refusal to extend the timeframe for responding, as allowed under SDCL 15-6-56(c) and SDCL 15-6-6(b), we first consider the merits of the McFarlands' claim that the circumstances here warranted a continuance under Rule 56(f).

[¶27.]     As to this issue, the McFarlands note that the Coyles had filed their partial summary judgment motion before *any* discovery had been done.  They maintain that the two affidavits they submitted with their continuance request were sufficient to warrant a continuance.  They highlight the fact that their counsel's affidavit specified the depositions and affidavits they intended to procure to support their claim that the property boundaries at issue are disputed.  They

argue that under this Court's precedent, the circuit court abused its discretion when denying this request.

[¶28.] The Coyles contend the McFarlands failed to meet their burden under Rule 56(f). They assert the circuit court properly considered both the McFarlands' affidavits and their objections thereto when denying the continuance request. The Coyles also contend that the McFarlands misunderstood and misapplied the intent element of a civil trespass when arguing that their good faith belief regarding the location of the property boundary at issue would preclude a finding that they committed the intentional tort of trespass.

[¶29.] As to this latter argument, the Coyles note that civil trespass occurs when "[o]ne who intentionally and without a consensual or other privilege[:]"

> (a) enters land in possession of another or any part thereof or causes a thing or third person so to do, or

> (b) remains thereon is liable as a trespasser to the other irrespective of whether harm is thereby caused to any of his legally protected interests.

*Benson v. State*, 2006 S.D. 8, ¶ 74, 710 N.W.2d 131, 159 (citing Restatement (Second) of Torts § 158 (1965)). They then note that, according to the Restatement, "[o]ne who intentionally enters land in the possession of another is subject to liability to the possessor of the land as a trespasser, although he acts under a mistaken belief of law or fact, however reasonable . . . that he . . . is in possession of the land or entitled to it[.]" Restatement (Second) of Torts § 164 (1965). This section of Restatement also notes: "In order to be liable for a trespass on land under the rule stated in § 158, it is necessary only that the actor intentionally be upon any part of the land in question." Restatement (Second) of Torts § 164, cmt. a (1965)

(noting that it is immaterial if the actor honestly and reasonably believes that he is the possessor of the land in question). The McFarlands did not, in their reply brief, cite any contrary authority on this issue.

[¶30.]     It does not appear that our Court has applied the provisions of § 164 of the Restatement. However, many courts, including the United States Supreme Court, have applied the general principle that acts may be deemed intentional for purposes of civil liability regardless of whether the actor knew that the conduct violated the law. *See, e.g.*, *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 645–46 (2015); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583 (2010) (citing the Restatement (Second) of Torts § 164, cmt. e (1963–1964) for the principle that the "intentional tort of trespass can be committed despite the actor's mistaken belief that she has a legal right to enter the property"). This principle has also been applied by lower courts when determining that a mistaken belief as to ownership does not insulate one from liability for a civil trespass. *See, e.g.*, *Caciopoli v. Lebowitz*, 26 A.3d 136, 146 (Conn. App. Ct. 2011) (noting that the tort of trespass requires "the intent to enter the land in question . . . regardless of the defendant's subjective belief as to the ownership of the land"); *Teasley v. Roberson*, 115 So. 211, 212 (Miss. 1928) (holding that a defendant's mistake of fact is no excuse for an act of trespass). We likewise adopt the premise from § 164 of the Restatement that a mistaken belief as to the ownership of property does not preclude a claim of trespass against one who intentionally enters or occupies the land of another.

[¶31.] However, this issue is not dispositive as to whether the McFarlands were entitled to Rule 56(f) relief. Underlying their request for a continuance under Rule 56(f) was their claim that no trespass occurred because the Walworth Street right-of-way continues along the entire boundary of Lot 25A.

[¶32.] As to that issue, we note that, pursuant to SDCL 15-6-56(f), if a party "cannot for reasons stated present by affidavit facts essential to justify his opposition [to summary judgment], the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Furthermore, "a party opposing a motion for summary judgment is entitled to conduct discovery when necessary to oppose the motion." *Davies*, 2022 S.D. 55, ¶ 50, 980 N.W.2d at 264 (quoting *Stern Oil Co.*, 2014 S.D. 28, ¶ 26, 848 N.W.2d at 281).

[¶33.] "In support of a Rule 56(f) affidavit requesting a continuance, the party opposing summary judgment must 'show[ ] how further discovery will defeat the motion for summary judgment.'" *Id.* (alteration in original) (quoting *Stern Oil Co.*, 2014 S.D. 28, ¶ 26, 848 N.W.2d at 281). In *Davies*, we explained:

> To make this showing, the Rule 56(f) affidavit must include identification of "the probable facts not available and what steps have been taken to obtain" those facts, "how additional time will enable [the nonmovant] to rebut the movant's allegations of no genuine issue of material fact[,]" and "why facts precluding summary judgment cannot be presented" at the time of the affidavit.

*Id.* (alterations in original) (quoting *Stern Oil Co.*, 2014 S.D. 28, ¶ 26, 848 N.W.2d at 281–82).

[¶34.] The Coyles initiated this action on June 7, 2023. The McFarlands'
counsel entered an appearance on July 28, 2023 and filed an answer on August 9,
2023. Within less than three weeks after the McFarlands filed their answer, the
Coyles filed a motion for partial summary judgment before any discovery had been
conducted. Given this very expeditious timeline, there was minimal time for the
McFarlands, as the nonmoving party, to produce any documentation of disputed
material facts to oppose the motion. Hence, the scenario presented here satisfies
the requisite showing of "'why facts precluding summary judgment [could not] be
presented' at the time of the affidavit." *Id.* (citation omitted).

[¶35.] Moreover, the McFarlands submitted affidavits, citing Rule 56(f),
supporting their motion for a continuance. In counsel's affidavit, which was also
submitted as an "initial response" to the Coyles' partial summary judgment motion,
counsel asserted that the boundaries of Lot Q1 are in dispute. He explained how
depositions of public officials and the subdivision developer, James Dacar, would
demonstrate that City ordinances governing the approval and recording of a plat
application were not followed when Lot Q1 was platted.[6] Counsel further noted
that the 2015 SIA, which is required by City ordinances to be executed and

---

6. In the McFarlands' response to the Coyles' partial summary judgment brief,
they stated that Dacar would testify that at the time the building committee
approved the placement of the driveway at issue, "the driveway was located
in the set-back of the future right-of-way and would not have been approved
if the Committee believed any part of the driveway was on the private
property of another." They stated Dacar would also testify that when Lot
25A was sold to them, it was his company's intent "to proceed with Walworth
Street through Lot Q1[,]" and that "public utility easements had already been
granted and City sewer is already installed in the anticipated Walworth
Street right-of-way."

approved by the City prior to the final approval of a plat, was recently recorded against Lot Q1 on May 23, 2023. According to the McFarlands' counsel, this recent recording occurred once the failure to do so at the time Lot Q1 was previously platted and approved by the City was brought to the attention of the Register of Deeds. He explained that discovery from Stewart Title Guarantee Company would demonstrate this failure or mistake to properly file the SIA at the time of platting Lot Q1.

[¶36.]        These assertions identify "how additional time will enable [the nonmovant] to rebut the movant's allegations[.]" *Id.* (alteration in original) (citations omitted). Here, whether or not a dedicated right-of-way exists along the entire southeast boundary of Lot 25A is a material fact relating to whether a civil trespass claim can be established. Information from City officials and the developer relating to the application of the City ordinances, the impact of the SIAs in relation to the relevant plats, and the interpretation and significance of the language in the SIAs at issue could conceivably shed further light on this question.[7] The McFarlands' Rule 56(f) affidavits are the type that this Court has deemed sufficient to warrant a continuance to allow the nonmoving party to engage in discovery prior to responding to a summary judgment motion. *Compare Betty Jean Strom Tr. v. SCS Carbon Transp., LLC*, 2024 S.D. 48, ¶¶ 41–42, 11 N.W.3d 71, 87–88 (concluding the circuit court abused its discretion in denying a Rule 56(f) motion because the supporting affidavit containing a detailed description of the relevant

---

7.    The parties have asserted conflicting interpretations of what is meant by the phrase "within the full length of the right-of-way adjacent to the southeast boundary of Lots 24 & 25A."

facts and information that would be sought via depositions was sufficient to warrant a continuance) *with Stern Oil Co.*, 2014 S.D. 28, ¶¶ 27–28, 848 N.W.2d at 282 (determining a Rule 56(f) affidavit that did not identify "specific facts further discovery might uncover" and "how additional discovery would rebut summary judgment" was insufficient) *and Davies*, 2022 S.D. 55, ¶¶ 52–54, 980 N.W.2d at 265 (concluding a "cursory" and "non-particularized" affidavit insufficient to satisfy Rule 56(f) requirements).

[¶37.]     The circuit court's denial of the motion for continuance made no reference to the adequacy of the McFarlands' Rule 56(f) affidavits or the case law governing such affidavits.  Although the Coyles assert that the court, when referencing their objections as a basis for its ruling, agreed with their claim that "further information would not change the material facts at issue regarding the right-of-way[,]" the court's denial of Rule 56(f) relief seemed to be based primarily, if not solely, on the untimeliness of the request.  In any event, to properly assess whether the circuit court abused its discretion in denying such relief, an analysis of the law governing the property dispute here is necessary to assess the merit of the Rule 56(f) request.

### *Dedication of a public right-of-way*

[¶38.]     In the Coyles' brief in support of their motion for partial summary judgment, they cited *Selway Homeowners Ass'n v. Cummings*, 2003 S.D. 11, 657 N.W.2d 307 to support their assertion that "[r]eal estate cannot be dedicated by accident or inference."  In *Selway*, we explained that dedication "is similar to that of a contractual agreement between two parties.  There must be an unconditional offer

by the grantor to create a public highway and there must be an unconditional acceptance by the appropriate public entity that it becomes one." *Id.* ¶ 20 (citing *Tinaglia v. Ittzes*, 257 N.W.2d 724, 728–29 (S.D. 1977)). The Coyles argued that such a dedication only occurred here in 2007. They noted that the 2007 plat shows that the right-of-way "ran from Birnam Wood Lane along the southeast boundary of proposed Lot 25, but ended at a line drawn between the east corner of proposed Lot 25, and the northeast corner of proposed Lot 1." The Coyles asserted that Dacar, Inc. made an unconditional offer by recording the 2007 plat—which highlighted the streets to be dedicated and referred to "dedicated street rights of way" in the caption—and that Butte County and the City accepted the dedication by signing the plat.

[¶39.] The Coyles then noted that when Lot 25 was later platted in 2013, the lot was larger than initially proposed, but the 2013 plat "shows that the right-of-way had not grown in the intervening six years." The Coyles further noted that both the 2015 plat of Lot 25A, which added more land from Lot Q to Lot 25, and the 2019 plat of Lot Q1, reflect that "the right-of-way had not grown from the original dedicated locations." Because these later plats did not include any further dedication of right-of-way, the Coyles argued no unequivocal dedication of additional right-of-way had occurred. As to the 2015 SIA, the Coyles acknowledged that it requires improvements to be installed in certain circumstances, but they claimed that the language "within the full length of the right-of-way adjacent to the southeast boundary of Lots 25 and 25A" is referring only to the existing right-of way adjacent to what was proposed Lot 25 as shown on the 2007 plat.

[¶40.] While the *Selway* case may lend support to the Coyles' contentions with respect to the law governing express dedications of public rights-of-way, as noted in *Tinaglia*, a case this Court cited in *Selway*, dedications can be either express or implied. *Tinaglia*, 257 N.W.2d at 729; SDCL 11-3-12. "A dedication is express when the intent is manifested by oral or written words, and is implied when the intent must be gathered from the acts of the dedicator." *Tinaglia*, 257 N.W.2d at 729 (quoting 11A Eugene McQuillin, *The Law of Municipal Corporations* § 33.3 (3rd Rev. Ed.)). "Otherwise stated, a dedication is express where the appropriation is formally declared, and is implied where it arises by operation of law from the owner's conduct and the facts and circumstances of the case." *Id.* (quoting McQuillin, *supra*, at § 33.3). We further noted in *Tinaglia* that there are statutory dedications and common-law dedications. *Id.* (noting that a "statutory dedication is in the nature of a grant based on substantial compliance with the terms of the applicable statute, while a common-law dedication is generally held to rest upon the doctrine of estoppel in pais").

[¶41.] More recently, in *Nelson v. Garber*, a case involving a dispute over an ownership interest in a section of roadway, we again recognized that a dedication of a road can be express or implied. 2021 S.D. 32, ¶ 24, 960 N.W.2d 340, 346–47. We noted the statutory requirements in SDCL 11-3-12 for dedicating land to the public through a plat and determined that no express dedication was included in the plat map or proprietor's certificate at issue. *Id.* We then looked to whether an owner's actions and the surrounding circumstances impliedly established an intent to dedicate a road for public use. *Id.* ¶ 25, 960 N.W.2d at 347. In doing so, we noted

that an implied dedication "is premised on the doctrine of equitable estoppel." *Id.* (quoting *Niemi v. Fredlund Twp.*, 2015 S.D. 62, ¶ 32, 867 N.W.2d 725, 733). We then considered how the road had been "regularly used" by the public and its owners and the intent of the developers. *Id.* ¶¶ 26–27. In particular, we noted that the public had used the road for almost forty years and the prior owners "were permitted to attach their circle driveway to the end of" the road and use the road to access their property for over twenty years. *Id.* In determining the road to be public, we considered affidavits from property owners regarding their use of the road and from county officials regarding the governing body's requirements of developers. We also noted that the subdivisions approved before and after the subdivision in question "further illuminate the developer's intention." *Id.* ¶¶ 27–28.

[¶42.] Also relevant to the property dispute at issue here are two City ordinances noted by the McFarlands. Ordinance 16.12.080 provides that

> [n]o plats of any subdivision shall be approved unless the improvements required by this chapter have been installed prior to such approval or unless the owner/subdivider shall have signed [an SIA] as prescribed by Chapter 16:16 to establish the responsibility for the construction of improvements in a satisfactory manner and within a period specified by the City Engineer[.]

This ordinance further requires that the SIA "be recorded with the register of deeds at the time of filing the plat." Ordinance 16.16.010 similarly states that before the final plat of any subdivision can be approved, an SIA that "has been signed by the owner/subdivider of the land in the subdivision and approved by the City Engineer and City Attorney must be provided to the Common Council."

[¶43.]     The 2015 SIA recorded with the plat of Lot 25A states that the "subdivider, or its successor, must *complete* the improvements detailed in the" 2002 plans "within the *full length* of the right-of-way adjacent to the southeast boundary of Lots 24 [and] 25A . . . prior to or as a condition of approval of any subdivision plat of Lot Q of Valley View Addition[.]" (Emphasis added.) This same language is contained in the 2013 SIA recorded with the plat of Lot 25. Although we need not decide this issue at this juncture of the proceedings, this language can reasonably be read to have required the completion of the improvements to the remaining stretch of right-of-way abutting Lot 25, and what later became Lot 25A, prior to, or as a condition of, the City's approval of the plat of Lot Q1. The approval of the driveway within this area of the right-of-way by the subdivision's building committee and the use of this driveway by the successive property owners in reliance thereon are also relevant factors to consider when determining whether there is either an implied or express dedicated right-of-way along the entire southeast boundary of Lot 25A.

[¶44.]     Based on the record, there appear to be material facts in dispute relating to the legal determination of the boundaries of the lots at issue in this trespass suit. Therefore, the McFarlands' request for a continuance to conduct discovery relating to this issue was warranted under Rule 56(f). However, because their Rule 56(f) affidavit was not filed within the timeframe set for responses to summary judgment motions in SDCL 15-6-56(c), we must further address whether there was excusable neglect warranting a consideration of the McFarlands' untimely Rule 56(f) request.

*Excusable neglect*

[¶45.]    The McFarlands argue the circuit court abused its discretion by not analyzing whether their counsel's failure to meet the deadline for responding to a summary judgment motion resulted from "excusable neglect" under SDCL 15-6-6(b) (Rule 6(b)).  They argue that their counsel's failure to respond to the Coyles' motion for partial summary judgment and statement of undisputed material facts fourteen calendar days before the hearing, as required by SDCL 15-6-56(c), was excusable.

[¶46.]    The Coyles contend Rule 6(b) is discretionary and assert the circuit court did not err by not applying it.[8]  They also claim that they would have suffered prejudice if the court had granted more time to the McFarlands given the protection order entered against Abbey precluding her "from accessing and utilizing her own property."

[¶47.]    "[A] trial court has discretion under SDCL 15-6-6(b) to enlarge the time to file a reply.  If, as in this case, the motion is made after the expiration of the time period, the trial court may permit the enlargement of time 'where the failure to act was the result of excusable neglect[.]'"  *Donald Bucklin Const. v. McCormick Const. Co.*, 2013 S.D. 57, ¶ 20, 835 N.W.2d 862, 867 (quoting SDCL 15-6-6(b)(2)).  We have noted that "[e]xcusable neglect in the context of SDCL 15-6-6(b)(2) 'is

---

8.    Although the Coyles note that the McFarlands did not cite Rule 6(b) in their continuance motion, in *Colton Lumber Company*, despite the fact that a motion for relief from a default judgment did not refer to any specific statute, we determined that the motion was clearly a motion to enlarge the time to answer a complaint under SDCL 15-6-6(b).  2002 S.D. 116, ¶ 3 n.1, 651 N.W.2d at 873.  We similarly apply Rule 6(b) and the corresponding case law governing motions to enlarge periods of time set forth by statute when considering the McFarlands' request here.

closely analogous to the excusable neglect which must be shown to set aside a default judgment or other final judgment under SDCL 15-6-55(c) and SDCL 15-6-60(b).'" *Id.* ¶ 21 (citations omitted). "Excusable neglect must be neglect of a nature that would cause a reasonable, prudent person to act similarly under similar circumstances." *Id.* (quoting *Elliott v. Cartwright*, 1998 S.D. 53, ¶ 9, 580 N.W.2d 603, 604–05). "'Excusable neglect' has no fixed meaning and should be 'interpreted liberally to [e]nsure that cases are heard and tried on the merits.'" *Id.* (quoting *Elliott*, 1998 S.D. 53, ¶ 9, 580 N.W.2d at 604–05). We have further noted that factors to be considered include whether there is a meritorious defense and "whether there is prejudice to the party opposing the enlargement of time." *Id.* (citation omitted).

[¶48.] Despite the failure to timely respond to the motion for partial summary judgment, there is no question the McFarlands' counsel "was engaged in the litigation and responsive[.]" *Donald Bucklin Const.*, 2013 S.D. 57, ¶ 26, 835 N.W.2d at 868 (attorney "acted reasonably to remedy his failure"). When the Coyles filed a protective objection to the untimely submission of evidence on September 15, 2023 (a Friday), the McFarlands' counsel immediately realized his mistake and moved for a continuance three days later (the following Monday). He also submitted two affidavits supporting a continuance under Rule 56(f) to conduct further discovery on what may be a meritorious defense, emailed the court and opposing counsel with an explanation of his personal circumstances underlying the missed deadline, and submitted a response to the Coyles' statement of material facts, all within ten days of the Coyles' protective objection. *Compare S. Dakota*

*Pub. Assurance All. for Pennington Cnty. v. McGuire*, 2018 S.D. 75, ¶ 17, 919 N.W.2d 745, 750 (finding excusable neglect when attorneys failed to serve their complaints because they "readily admitted their mistakes in affidavits[,]" "filed complaints almost immediately after realizing the 20 days had expired[,]" "were still negotiating settlements [with the defendant,]" and "were not engaging in any dilatory tactics") *with Leighton v. Bennett*, 2019 S.D. 19, ¶ 19, 926 N.W.2d 465, 471 (finding no excusable neglect where "counsel did not submit an affidavit to the circuit court or otherwise provide a factual basis that could support a finding of excusable neglect").

[¶49.] Here, during the short timeframe after this action was commenced and leading up to the filing of the partial summary judgment motion, counsel explained the personal circumstances that had turned his life "upside-down" and resulted in his failure to successfully maintain the pace of his law practice. Such circumstances could understandably cause substantial stress that would impact one's professional life. Importantly, upon learning of his failure to meet the statutory deadline, counsel acted expeditiously and reasonably when attempting to remedy his mistake.

[¶50.] Regarding the Coyles' claim that they would be prejudiced by a continuance, it is significant that when the partial summary judgment motion was filed, the lawsuit was only two and a half months old. The motion was filed just two weeks after the McFarlands filed their answer to the complaint and no discovery had been conducted. *Donald Bucklin Const.*, 2013 S.D. 57, ¶¶ 27–28, 835 N.W.2d at 869 (finding no prejudice when "neither party had conducted discovery"). And while the Coyles pointed to the existing protection order issued against Abbey that

"partially prohibited her from accessing and utilizing her own property" as the reason why they would be prejudiced by a continuance, they never explained how they would be harmed if they were deprived of access or use of this small portion of property which includes part of the McFarlands' driveway. Notably, this driveway was in existence when the Coyles bought Lot Q1, a largely undeveloped property with no buildings near the McFarlands' lot.[9]

[¶51.]        The relevant factors related to requests for a continuance supported a finding that excusable neglect existed under the circumstances here. We conclude that the circuit court abused its discretion by not giving due consideration to the fact that the litigation was in its infancy and no discovery had occurred, the McFarlands' meritorious request for Rule 56(f) relief, the nature of their counsel's personal circumstances, and the lack of actual prejudice to the Coyles.[10] We therefore reverse and remand for further proceedings consistent with this opinion.

[¶52.]        JENSEN, Chief Justice, and KERN and SALTER, Justices, concur.

[¶53.]        MYREN, Justice, dissents.

---

9.    The doubtful nature of the Coyles' assertion of prejudice became even more apparent when they only sought nominal damages and did not present any evidence at the later trial to the court on the issue of damages.

10.    Given our resolution of this first issue, we need not address the McFarlands' remaining claims that the circuit court abused its discretion when denying the later motion for reconsideration filed by their new counsel and that the court erred as a matter of law by granting the Coyles' motion for partial summary judgment.

#30868

MYREN, Justice (dissenting).

[¶54.]     The following is the relevant timeline for this case.  The Coyles filed their lawsuit against the McFarlands on June 7, 2023.  The McFarlands filed an answer on August 9, 2023.  The Coyles filed a motion for summary judgment on August 28, 2023, and set it for a hearing on September 28, 2023.  On September 18, the McFarlands' counsel requested a continuance of the summary judgment hearing, noting that "due to personal reasons, [counsel] is unable to timely answer Plaintiffs' pleadings adequately and has several prior obligations within said time period."  The McFarlands' counsel did not provide the circuit court or opposing counsel with any additional explanation about any disruption to his life or law practice.  The McFarlands' counsel submitted an SDCL 15-6-56(f) (Rule 56(f)) affidavit on September 20, 2023, which also requested a continuance, arguing that there was "insufficient time" to prepare the necessary discovery to respond to the motion for summary judgment.  On September 21, 2023, the circuit court ruled that this Rule 56(f) affidavit was untimely and denied the motion for continuance.

[¶55.]     Four days later, the McFarlands' counsel sent an email to the circuit court and opposing counsel explaining that his wife had asked for a divorce in June and that he had learned in July that she had an extramarital affair with one of his friends.  He asserted that he had "unintentionally allowed these deadlines to pass" because of this disruption to his life.

[¶56.]     In paragraph 44, the majority opinion concludes that the McFarlands' Rule 56(f) affidavit was not filed within the timeline set for responses to the summary judgment motion in SDCL 15-6-56(c).  I agree.  The circuit court denied

-30-

the motion for a continuance because the Rule 56(f) affidavit was not timely. Having concluded that the affidavit was untimely, we must conclude that the circuit court did not abuse its discretion when it initially denied the continuance. Ultimately, the circuit court granted the motion for summary judgment because the McFarlands had not established any material facts in dispute.

[¶57.] Several months later, the McFarlands' new counsel filed a motion for relief from the order granting summary judgment pursuant to SDCL 15-6-60(b) (Rule 60(b)). This motion was premised on the idea that the untimely Rule 56(f) affidavit was the result of "excusable neglect" by the McFarlands' original counsel. The McFarlands' original counsel submitted an affidavit averring that his wife asked him for a divorce in June 2023 and that, in July 2023, he learned that she had been involved in a sexual affair with a close friend. He asserted that these revelations resulted in significant disruption to his life and law practice. The circuit court clearly considered all these circumstances when it denied the motion for relief from the summary judgment. We review a circuit court's decision to grant or deny a Rule 60(b) motion for an abuse of discretion. *In re Estate of Mack*, 2025 S.D. 7, ¶ 13, 17 N.W.3d 874, 879. The majority opinion concludes that the circuit court did not give "due consideration" to all the circumstances of the case. However, it is abundantly clear that the circuit court was fully aware of all the circumstances of the case and gave them the consideration it deemed appropriate. Even if our "consideration" of the facts would have led us to a different conclusion, we cannot say the circuit court abused its discretion. I would affirm.